UNITED STATES DISTRICT COURT
FILED
AUG 17 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM REYNOLDS, II,

Plaintiff,

v.

25-CV-127 (JLS)

JEFFREY SCHMIDT,
SHAWN MCADAMS,
CHEEKTOWAGA POLICE DEPARTMENT,
TOWN OF CHEEKTOWAGA,
JOHN DOE,[1]

Defendants.

**DECISION AND ORDER**

*Pro se* plaintiff William Reynolds, II filed this action seeking relief under 42 U.S.C. § 1983. Dkt. 1. Reynolds also filed a motion for leave to proceed *in forma pauperis* ("IFP"). Dkt. 2.

Because Reynolds meets the requirements of 28 U.S.C. § 1915(a), he is granted permission to proceed IFP. The Court has therefore screened his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

For the below reasons, the claims against the Cheektowaga Police Department are dismissed with prejudice. Reynolds's inadequate medical care claim will proceed to service upon John Doe ("Doe"). Reynolds's claims against

[1] The Court has liberally construed the complaint to allege a claim against John Doe. The Clerk of the Court is respectfully directed to add John Doe to the docket sheet.

Jeffrey Schmidt ("Schmidt") and Shawn McAdams ("McAdams") for violating his rights under the First Amendment to peacefully assemble and to petition the Government for a redress of grievances will proceed to service, as will his Fourth Amendment search and seizure claims. The Court grants Reynolds leave to replead his failure to intervene claim against McAdams. Reynolds's Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims will proceed to service upon the Town of Cheektowaga, but his Section 1983 claim against the Town is dismissed with leave to amend. Reynolds's amended complaint is due **October 1, 2026**.

## DISCUSSION

## I. Legal Standards

### A. Review Under the IFP Statute

A court shall dismiss a complaint in a civil action in which a litigant seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action is frivolous, malicious, or fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

### B. Pleading Standards

In evaluating a complaint, a court must accept all factual allegations as true and must draw all inferences in a plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly

when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege sufficient facts to support the claim. *See Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (concluding that district court properly dismissed a *pro se* complaint under Section 1915(e)(2) because the complaint did not meet pleading standard in *Twombly* and *Iqbal*); *accord Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (setting forth same standard of review).

### C. Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, "unless [it] can rule out any possibility, however unlikely . . . , that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d

99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive[] . . . it is not an abuse of discretion to deny leave to amend.").

### D. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, *respondeat superior* liability is unavailable in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, at the screening stage, a plaintiff must plausibly allege "that each Government-official defendant,

through the official's own individual actions[] . . . violated the Constitution." *Id.* (quoting *Iqbal*, 556 U.S. 676).

## II. Allegations

On December 4, 2024, Reynolds went to the Cheektowaga Police Department to file a complaint against "Lieutenant Slawatycki," who is not a defendant in this case. Dkt. 1 at 4, 11. The front desk advised Reynolds that a complaint must be lodged with a supervisor and, because none was available at that time, Reynolds could return the next day during business hours and someone would meet with him then. *Id.* at 4, 11–12.

Reynolds returned at approximately 9:30 a.m. the next day and advised the dispatcher that he "needed to speak with the Chief or Captain to file a complaint on a Lieutenant." *Id.* at 12. While Reynolds was waiting, he "began to film things . . . in the lobby." *Id.* The dispatcher asked Reynolds if he "needed anything else"; Reynolds "advised [he] was good, just filming and still waiting." *Id.*

After some time, Sergeant Rutkowski ("Rutkowski"), who is not a defendant to this lawsuit, arrived and spoke with Reynolds about previous interactions with Cheektowaga Police Officers and what had brought Reynolds "to this point in [his] complaint process." *Id.* Reynolds and Rutkowski spoke for approximately 45 minutes. *Id.* At the conclusion of their meeting, Rutkowski said he was told the Chief and Captain were in a meeting and advised Reynolds that he could wait. *Id.* Rutkowski told Reynolds that he would let the Chief and Captain know he was waiting, and Rutkowski "left without incident." *Id.*

After "some more waiting in the empty lobby . . . McAdams . . . advise[d Reynolds] that the Chief and/or Captain would not be coming out to take the complaint and that [Reynolds] was being asked to leave." *Id.* at 12. Reynolds "advised that it is [his First A]mendment right to redress grievances to [his] government and [he] could not be trespassed from a public lobby [sic] without first committing a crime." *Id.* "At this time . . . Schmidt [came] out and [told Reynolds] that all of [his] complaints, [four] in total, [were] closed and that [he] was no longer allowed to file complaints against his officers[.]" *Id.* Schmidt told Reynolds that if he did not leave, he would be arrested for trespassing. *Id.* Reynolds "asked what crime [he] was being trespassed [sic] for"; Schmidt responded, "'obstruction of governmental operations' because [Reynolds] intimidated his staff." *Id.*

Reynolds told Schmidt "that [he] was going to stay where [he] was and peacefully protest the violation of [his] [F]irst [A]mendment right to redress grievances to [his] government." *Id.* Schmidt responded by grabbing Reynolds's "left arm and wrist and tell[ing him] that [he is] under arrest for trespassing." *Id.* at 12. McAdams grabbed Reynolds's right arm and, together with Schmidt, pulled Reynolds up, placed his hands behind his back, and handcuffed him. *Id.* It was now approximately 11:26 a.m. *Id.*

Because of past interactions with Reynolds, the Cheektowaga Police Department is aware that he has a seizure disorder. *Id.* Even so, the officers denied Reynolds's request for a "chair that [he] could be safe in." *Id.* at 6. Reynolds suffered a seizure shortly after being placed in the holding cell, which caused him to

fall to the floor. *Id.* at 6, 13. During the seizure, John Doe "can be seen wheeling around on his chair completely neglecting [Reynolds] and refusing to provide care or even check to see if [Reynolds] was breathing or conscious. Once a second officer arrive[d] . . . they unlock[ed] the cell and check[ed] on [him]. [Reynolds] remained on the floor for 40 minutes until [he] was able to gain enough strength to pull [himself] up onto the bench." *Id.* at 6.

Reynolds then had a second seizure. *Id.* at 13. At this point the officers provided Reynolds with a wheelchair. *Id.* Someone wheeled him to a drinking fountain, but Reynolds was unable to get a drink "because [he] was in pain and too lightheaded to stand safely." *Id.* Even so, the officers refused to assist in any way, by, for example, offering a cup for Reynolds to drink from. *Id.* The officers also initially refused to let Reynolds wear his shoes against the "freezing" concrete, even though "they were slip ons." *Id.* But after an hour in the cell, Reynolds was allowed to wear his shoes. *Id.* Reynolds was released at approximately 1:30 p.m. with citations for obstruction of governmental operations, criminal trespassing, and resisting arrest. *Id.*

## III. Analysis

### A. Cheektowaga Police Department

"It is well-established that under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) (internal quotation

marks and subsequent citation omitted). For this reason, claims against the Cheektowaga Police Department are deemed to be brought against the Town of Cheektowaga, and the Cheektowaga Police Department shall be terminated as a defendant to this action. *See Abram v. Town of Cheektowaga Police Dep't*, No. 18-CV-1267S, 2020 WL 3513677, at *4 (W.D.N.Y. June 29, 2020) (dismissing claims against Cheektowaga Police Department because the Department "is an administrative arm of the Town and is not a suable entity").

**B. Town of Cheektowaga**

To hold the Town of Cheektowaga liable under Section 1983, Reynolds must show that the challenged action was performed pursuant to a municipal policy or custom. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Such a claim is pled with facts showing: "(1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks and citations omitted).

> A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (citing cases).

Reynolds's allegations do not suggest that an official policy or custom of the Town of Cheektowaga caused him to be subjected to the denial of a constitutional

right. His allegations instead imply that Schmidt, on this single occasion, simply had enough of Reynolds filing unfounded complaints against his officers and loitering in the police station's lobby. Dkt. 1 at 5, 12. The Court finds, therefore, that the complaint does not plausibly allege *Monell* claims against the Town. As such, Section 1983 claims brought pursuant to *Monell* are dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), but with leave to amend.

### C. Schmidt, McAdams, and Doe

Although Reynolds has checked only the "official capacity" boxes on the form complaint, Dkt. 1 at 2–3, the Court has considered whether Reynolds has plausibly alleged claims against Schmidt, McAdams, and Doe in their individual capacities. *McEachin*, 357 F.3d at 200.

The Court finds that the complaint presents colorable claims against Schmidt and McAdams for violating Reynolds's rights under the First Amendment to peacefully assemble and to petition the Government for a redress of grievances. The complaint asserts a colorable claim against Schmidt and McAdams[2] under the Fourth Amendment's right to be free from unreasonable searches and seizures.

The Court also finds that the complaint presents a colorable claim under the Fourteenth Amendment against Doe for deliberate indifference to Reynolds's serious medical need.[3] As such, the complaint will proceed to service upon the John

---

[2] Although it may later come to light that the citations issued to Reynolds, Dkt. 1 at 6, implicate *Heck v. Humphrey*, 512 U.S. 477 (1994), that possibility does not prevent the complaint from proceeding to service.

[3] Because Plaintiff was an arrestee at the time of the alleged constitutional violations, allegations of deliberate indifference are analyzed under the Fourteenth

Doe guard alleged to have been "wheeling around on his chair" while Reynolds was having a seizure. Dkt. 1 at 6.

Reynolds appears to be attempting to assert against McAdams both a Fourth Amendment false arrest and a failure to intervene claim for "failing to protect" him from Schmidt's false arrest. *Id.* at 2. Although alternative pleading is permitted when the allegations indicate that discovery is needed to identify "exactly which officer did what," *Buari v. City of New York*, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021) (quoting *Paul v. City of New York*, No. 16-CV-1952 (VSB), 2017 WL 4271648, at *4–5 (S.D.N.Y. Sept. 25, 2017)); here, Schmidt and McAdams are the only Defendants involved in Reynolds's arrest. Since McAdams "cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop [himself] from committing that violation," *id.* at 392, the failure to intervene claim against McAdams is dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). However, in reaching this conclusion, the Court has drawn an inference from Reynolds's allegation that McAdams failed to protect him from another officer, but the inference drawn—that he failed to intervene in the false arrest—may not be what Reynolds intended. Accordingly, Reynolds may clarify his failure to protect / intervene allegations against McAdams in an amended complaint.

---

Amendment, pursuant to the standard set forth in *Darnell v. Pineiro*, 849 F.3d 17, 29-36 (2d Cir. 2017).

### D. Americans with Disabilities Act and Rehabilitation Act

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (internal quotation marks and citation omitted). The statute provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* (quoting 42 U.S.C. § 12132). Local police departments fit "squarely within the statutory definition of public entity." *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 327 (N.D.N.Y. 2023) (quoting *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (subsequent quotation omitted)). "To assure that those requirements are met, 'reasonable accommodation' may have to be provided to the qualified individual." *Harris*, 572 F.3d at 73 (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273–74 (2d Cir. 2003)). Similarly, the Rehabilitation Act protects a "qualified individual with a disability" from being excluded from participation in, denied the benefit of, or subjected to discrimination "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Although there are "subtle distinctions" between the 42 U.S.C. § 12132 and 29 U.S.C. § 794(a), the purpose of both statutes is to prevent discrimination based upon disability and, as a result, courts generally apply the same legal standard to claims arising under both provisions. *Henrietta D.*, 331 F.3d at 272. This District has previously highlighted two differences: (1) that "all public entities are subject to

Title II [of the ADA], whereas Section 504 of the RA applies only to those institutions receiving Federal financial assistance" and (2) "the reach of the [RA] is limited to denials of benefits *solely* by reason of . . . disability, while the ADA applies more broadly to such denials by reason of . . . disability." *Thompson v. N.Y. State Corr. & Cmty. Supervision*, No. 22-CV-6307-FPG, 2022 WL 4562318, at *9 (W.D.N.Y. Sept. 29, 2022) (internal quotation marks and citations omitted). Because no distinction between the statutes is as-yet relevant here, the Court will analyze Plaintiff's allegations vis-à-vis the ADA and the RA simultaneously. *See Henrietta D.*, 331 F.3d at 272; *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (treating RA and ADA claims brought by a state prisoner the same where the "subtle distinctions" between the two statutes were not at issue).

To establish a violation of either statute that is sufficient to survive screening, Reynolds must show: (1) he is a qualified individual with a disability; (2) the defendant is subject to the ADA or RA; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of his disability. *Wright*, 831 F.3d at 72 (citing *Henrietta D.*, 331 F.3d at 272).

An ADA or RA plaintiff is a "qualified individual with a disability," when his pleading shows that he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); *Martinez v. N.Y. State Div. of Hum. Rts.*, No. 1:13-CV-1252-GHW, 2015 WL 437399, at *5 (S.D.N.Y. Feb. 2, 2015) ("The [RA] defines the term 'individual with a disability' by cross

reference to the [ADA]." (citing 29 U.S.C. § 705(20)(B)). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted). A "reasonable accommodation" is one that would permit a qualified disabled individual "to have access to and take a meaningful part in public services and public accommodations." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (citing cases), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004).

For the purpose of screening, the Court assumes that Reynolds's seizure disorder constitutes a "disability" within the meaning of the ADA. *See* 42 U.S.C. § 12102(1)(A) (defining "disability" under the ADA as "a physical or mental impairment that substantially limits one or more major life activities"); 28 C.F.R. § 35.108(b)(2) (classifying epilepsy as a "[p]hysical or mental impairment"). The Town of Cheektowaga and its police department are "public entities." *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021); *Lalonde*, 662 F. Supp. 3d at 327. And the "[a]rrest and post-arrest processing . . . each constitute a 'service,' 'program,' or 'activity' under Title II of the ADA and the [RA]." *Heggs v. City of New York*, No. 17-CV-3234(DG)(TAM), 2023 WL 9786044, at *6 n.6 (E.D.N.Y. Aug. 24, 2023) (quoting *Morales v. City of New York*, No. 13-CV-7667 (RJS), 2016 WL 4718189, at *7 (S.D.N.Y. Sept. 7, 2016) (collecting cases) (internal quotation marks omitted)), *report and recommendation adopted,* 2024 WL 759439 (E.D.N.Y. Feb. 23, 2024);

*accord Williams v. City of New York*, 121 F. Supp. 3d 354, 368 (S.D.N.Y. 2015) ("[L]aw enforcement officers who are acting in an investigative or custodial capacity are performing 'services, programs, or activities' within the scope of Title II."). Police fail to accommodate an arrestee's disability when they cause the disabled arrestee "to suffer greater injury or indignity in that process than other arrestees." *Williams*, 121 F. Supp. at 369 (citations omitted); *accord Durr v. Slator*, 558 F. Supp. 3d 1, 28 (N.D.N.Y. 2021).

Reynolds alleges that individuals at the Cheektowaga Police Department know he has a seizure disorder. Dkt. 1 at 12. He alleges that after his arrest he asked for a safe place to sit because of his disorder—such as a wheelchair or a chair with arms—but Cheektowaga Police Department officials denied his request. *Id.* at 5–6. As a result, when Reynolds had a seizure, he fell to the floor of the holding cell. *Id.* at 6, 13. He remained on the holding cell floor for approximately 40 minutes before he was able to pull himself "up onto the bench." *Id.* at 6. After Reynolds had a second seizure officials gave him a wheelchair to sit in. *Id.* The Court finds that Reynolds has plausibly alleged ADA and RA claims based on the failure to reasonably accommodate his disability by providing him with a safe place to sit.

Reynolds indicates that he is asserting his reasonable accommodation claims against the Cheektowaga Police Department. *See* Dkt. 1 at 3. Although courts have found that police departments are public entities for purposes of the ADA and RA, *Lalonde*, 662 F. Supp. 3d at 327, in New York, local police departments are not

suable entities. For this reason, and because "municipalities may be held vicariously liable for violations of Title II of the ADA and Section 504 of the [RA] committed by their agents," *id.* at 329 (quoting *Morales*, 2016 WL 4718189, at *7), Reynolds's ADA and RA claims will proceed to service upon the Town of Cheektowaga.

## CONCLUSION

For the above reasons, the claims against the Cheektowaga Police Department are dismissed with prejudice. Reynolds's inadequate medical care claim will proceed to service upon Doe. Reynolds's claims against Schmidt and McAdams for violating his rights under the First Amendment to peacefully assemble and to petition the Government for a redress of grievances will proceed to service, as will his claims based on Fourth Amendment search and seizure. The Court grants Reynolds leave to replead his failure to intervene claim against McAdams. Reynolds's ADA and RA claims will proceed to service upon the Town of Cheektowaga, but his Section 1983 claim against the Town is dismissed with leave to amend. Reynolds's amended complaint is due **October 1, 2026.**[4]

The amended complaint must be drafted in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Reynolds is advised that an amended complaint will completely replace the original complaint and render it of no legal effect. *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).

---

[4] In permitting certain claims to proceed to service, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

Therefore, Reynolds's amended complaint must include all necessary allegations so that the amended complaint stands alone as the sole complaint in this action.

## ORDER

IT HEREBY IS ORDERED that Reynolds's motion for leave to proceed IFP (Dkt. 2) is GRANTED; and it is further

ORDERED that claims against the Cheektowaga Police Department are dismissed with prejudice, and the Clerk of the Court shall terminate this Defendant; and it is further

ORDERED that Reynolds's inadequate medical care claim against Doe will proceed to service; and it is further

ORDERED that Reynolds's claims against Schmidt and McAdams for violating his rights under the First Amendment to peacefully assemble and to petition the Government for a redress of grievances will proceed to service, as will his claims based on Fourth Amendment search and seizure;

ORDERED that the Section 1983 claim against the Town of Cheektowaga and the failure to intervene claim against McAdams are dismissed for failure to state a claim, but with leave to amend; and it is further

ORDERED that Reynolds's ADA and RA claims against the Town of Cheektowaga will proceed to service; and it is further

ORDERED that Reynolds's amended complaint is due **October 1, 2026**; and

it is further[5]

ORDERED that the Clerk of the Court shall send to Reynolds with this Decision and Order a copy of the original complaint (Dkt. 1), a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Reynolds does not file an amended complaint by the deadline set by the Court, the Clerk of the Court is directed to cause the United States Marshal to serve copies of the summons, complaint (Dkt. 1), and this Decision and Order upon the Town of Cheektowaga, Schmidt, McAdams, and Doe (once identified) without Reynolds's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Reynolds's favor; and it is further

ORDERED that the Clerk of the Court shall forward a copy of the complaint (Dkt. 1) and this Decision and Order by email to Thomas E. Fowler, Jr., Esq., Cheektowaga Town Attorney & Town Prosecutor, lawdepartment@tocny.org. Pursuant to *Valentin v. Dinkins,* 121 F.3d 72 (2d Cir. 1997), the Court requests that the Cheektowaga Town Attorney & Town Prosecutor ("Town Attorney") ascertain the identity of and last known service address for John Doe.[6] The Town Attorney

---

[5] If Plaintiff files an amended complaint as directed in this Decision and Order, service will be deferred until such time as the Court has screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

[6] Pages 12 and 13 of the complaint may assist in identifying John Doe. There, Reynolds alleges that he was confined after an arrest at the Cheektowaga Police Department on December 5, 2024. Plaintiff also avers that there is a video recording of his confinement. Dkt. 1 at 6, 9. If Reynolds has additional

need not undertake to defend or indemnify this individual at this juncture. This order merely provides a means by which Reynolds may properly serve Doe as instructed by the Second Circuit in *Valentin*; and it is further

ORDERED that the Town Attorney shall return the name and last known service address of John Doe by **September 16, 2026** either electronically in CM/ECF by selecting "*Valentin* Response" under "Discovery Documents" or by mail to the *Pro Se* Litigation Unit, United States District Court, 100 State Street, Rochester, New York 14614.[7] Should the *Valentin* response return personally identifiable information such as a home address, that contact information shall be given to the Marshals Service solely for the purpose of effecting service; this information will otherwise remain confidential; and it is further

ORDERED that upon service, pursuant to 42 U.S.C. § 1997e(g)(2), the Town of Cheektowaga, Schmidt, McAdams, and Doe are directed to respond to the complaint; and it is further

ORDERED that, pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Reynolds must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with

---

information—such as a physical description—that will assist in identifying John Doe, he should inform the Court by filing a written statement.

[7] Responses filed electronically in CM/ECF are reviewed by Court personnel before being made public.

prejudice.

SO ORDERED.

Dated: August 17, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE